IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 1:18-cv-1486<br>)<br>) |
| LAWRENCE PONZI, ET AL., | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Plaintiff and Defendants' Motions for Summary Judgment.

On December 1, 2016, Karin Sheire was driving her son James Sheire's car when she struck a pedestrian, Rosemarie Cruz. Cruz unfortunately succumbed to her injuries, leaving behind two young daughters. After the accident, the Estate of Rosemarie Cruz sued Karin Sheire in Alexandria Circuit Court alleging wrongful death (the "Underlying Lawsuit"). The Plaintiff subsequently filed this declaratory judgment action seeking a declaration that there is no insurance coverage for Karin Sheire and the Underlying Lawsuit under an umbrella liability insurance policy that Plaintiff issued to Karin Sheire's son and daughter-in-law.

At the time of the accident, Karin Sheire was staying with her son and his wife and children in their Arlington, Virginia

home for a two-week visit. For most of the year, Karin Sheire resides with her husband in Great Falls, Montana, but with some regularity, visits her son's family in Arlington. Since 2012, Karin Sheire has visited her son two or three times per year, staying on average two weeks each visit.

The evidence shows that Karin Sheire keeps some of her clothes and personal belongings at her son and daughter-in-law's Arlington home, where she also has her own bedroom and bathroom. While visiting, Karin Sheire regularly supports her son's family by cooking breakfast for her grandchildren, taking her grandchildren to school, grocery shopping, and cleaning.

In 2002, Karin Sheire immigrated from Germany to the United States and immediately moved in with her husband in the Great Falls, Montana home, which they own jointly. She keeps all of her business, financial, banking, tax, and medical affairs in Montana. She also keeps personal belongings, furniture, and family heirlooms in her Montana home.

Karin Sheire also uses her Great Falls, Montana address in connection with her bank accounts, car registration, car insurance, pension, credit cards, doctors, health insurance, life insurance, cellphone account, and utilities. She also uses her Montana address as her official address with the United States for immigration purposes and for filing state and federal taxes. Karin Sheire has a Montana issued driver's license, and after the

accident, she returned to Montana and retained a Montana attorney in connection with the accident.

At the time of the accident, James Sheire and his wife Heather Sheire were the named insureds under two insurance policies issued by Plaintiff: a Personal Auto Liability Policy (the "Primary Policy") and a Personal Liability Umbrella Policy (the "Umbrella Policy"). After Cruz's estate brought the Underlying Lawsuit, Karin Sheire sought coverage under both policies.

The Primary Policy provides $250,000 in coverage per person for, in relevant part, "'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." Under the Primary Policy, "insured" means "any person using 'your covered auto.'" Plaintiff did not contest coverage for the Underlying Lawsuit under the Primary Policy and has tendered its $250,000 applicable limit.

The Umbrella Policy provides up to $1 million in additional insurance coverage in excess of the Primary Policy's applicable limit, "if a claim is made or suit is brought against an insured for damages because of a loss for which the insured is legally liable and to which this policy applies[.]" Significantly, the Umbrella Policy defines "insured" differently than the Primary Policy. The Umbrella Policy defines "insured" to mean, in relevant part, "you and your relatives whose primary residence is your household." "You" is defined to mean the Named Insureds, James and

3

Heather Sheire. In this declaratory judgment action, Plaintiff argues that there is no coverage for Karin Sheire or the Underlying Lawsuit under the Umbrella Policy because Karin Sheire does not qualify as an "insured" under the Umbrella Policy. In particular, Plaintiff argues that Karin Sheire is not an "insured" because her "primary residence" was not, at the time of the accident, James and Heather Sheire's household. The parties agree that the sole issue on their cross-motions for summary judgment is whether Karin Sheire qualifies as an "insured" under the Umbrella Policy.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). This Court finds this case is ripe for summary judgment.

Because the Umbrella Policy was "issued or delivered" to James and Heather Sheire in Virginia, the parties agree that Virginia

law governs its interpretation. <u>Buchanan v. Doe</u>, 431 S.E.2d 289, 291 (Va. 1993) ("the law of the place where an insurance contract is written and delivered controls issues as to its coverage."). The parties disagree, however, as to whether Defendants have the burden of establishing that coverage exists under the Umbrella Policy. The parties agree that the burden is normally on a policyholder to bring himself within the terms of the policy, but Defendants argue that because the party seeking coverage here is the claimant and not the policyholder, the claimant's burden is only "technical."

Where a third-party tort claimant seeks coverage from an insurer, it must stand in the shoes of the policyholder. <u>Erie Ins. Exch. V. Meeks</u>, 288 S.E.2d 454, 456-57(Va. 1982). Virginia law is also clear that the *party* seeking coverage bears the initial burden of proving that it is entitled to coverage. <u>Bohreer v. Erie Ins. Grp.</u>, 475 F.Supp.2d 578, 585 (E.D. Va. 2007) (emphasis added). This threshold burden does not shift to an insurer because it filed a declaratory judgment action. <u>TRAVCO Ins. Co. v. Ward</u>, 715 F. Supp. 2d 699, 706-07 (E.D. Va. 2010). Based on these well-settled principles, the Defendants have the initial burden of bringing themselves "within the terms" of the Umbrella Policy.

The dispositive issue in this case is whether Karin Sheire is an "insured" under the Umbrella Policy, and the answer turns on whether her "primary residence" was her son's "household."

5

Defendants advance two primary arguments as to why Karin Sheire's "primary residence" was her son's household on the date of the accident. First, Defendants argue that the phrase "primary residence" is not to be confused with a "permanent" residence, and because "primary" may mean "most important," the evidence shows that Karin's "most important" residence was her son's Arlington home. Second, Defendants alternatively argue that the phrase "primary residence" is ambiguous and should be construed against Plaintiff and in favor of coverage. Va. Farm Bureau Mut. Ins. Co. v. Hodges, 385 S.E.2d 612, 614 (Va. 1989) ("We construe insurance policies in favor of coverage if their language is ambiguous.").

While there does not appear to be any Virginia law interpreting the phrase "primary residence" in an insurance policy, case law interpreting the similar phrase "residen[t] of a household" is instructive. In Patterson, the Virginia Supreme Court decided whether a motorist, William Patterson, was a "resident of the same household" as his father for purposes of auto insurance coverage. Allstate Ins. Co. v. Patterson, 344 S.E.2d 890, 891 (Va. 1986). At the time of the accident, Patterson had been traveling with a motorcycle gang for two years, keeping many of his personal items at his father's home while he was on the road and staying in various gang clubhouses across Virginia. Patterson, 344 S.E.2d at 891-92.

Interpreting the phrase "resident of the same household," the Patterson court first recognized that the word "household" connotes "a more settled or permanent status." Id. at 892. The court also explained that "whether the term 'household' or 'family' is used, the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof; a 'collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interest and social happiness.'" Id. While a person's "intent" is also important in determining whether he or she qualifies as a resident of a particular household, the Patterson court further stated that conduct can belie intent. Id. at 893 ("while a person's intention to become a member of particular household need not be coupled with continuous residence, the intention must be accompanied by a reasonable degree of regularity in the person's residential contacts with the household; casual, erratic contacts are not sufficient."). Applying this understanding, the Virginia Supreme Court reversed the trial court and held that Patterson was not a "resident of his father's household on the date of the accident." Id. at 893.

Although the precise phrase used in the Umbrella Policy — "primary residence" — was not at issue in Patterson, the Virginia Supreme Court's interpretation of the words "resident" and

7

"household" is instructive. Plaintiff contends that Defendants cannot establish that Karin Sheire was a resident of her son's household, let alone that it was her "primary residence." Plaintiff argues that the evidence shows that Karin Sheire keeps almost all of her personal belongings, banking, tax, medical, and financial records in her Great Falls, Montana home. Plaintiff also argues that the evidence shows that, while Karin Sheire has visited her son in Arlington with some regularity, she spends an overwhelming majority of her time in her Great Falls, Montana home with her husband, where she has lived since immigrating from Germany in 2002.

The Court agrees with Plaintiff – the evidence shows that Karin Sheire's "primary residence" is not her son's household. Although Defendants argue that the phrase is ambiguous and should be interpreted in favor of coverage, the Court finds that the phrase is unambiguous and self-defining. And although Karin Sheire may have "intended" that her son's home was her "primary residence," her conduct and actions belie that intent. See id. Karin Sheire spent the vast majority of her time living with her husband in her Great Falls, Montana home, where she has lived since immigrating to the United States. She keeps almost all of her belongings there, including her family's heirlooms. While being questioned by police after the accident, Karin Sheire stated that her address was Great Falls, Montana. And shortly after the

accident, Karin Sheire did return home and retained a Montana-based attorney. Because the evidence shows that Karin Sheire's "primary residence" was not her son's Arlington home, the Court finds that Karin Sheire does not qualify as an "insured" under the Umbrella Policy.

For the forgoing reasons, this Court finds that Plaintiff is entitled to summary judgment. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
December 20, 2019